CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 16 2005

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TERRY E. ABSHIRE,<br>Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 7:04-CV-00683 |
| | ) | |
| JO ANN B. BARNHART, | ) | By: Michael F. Urbanski |
| COMMISSIONER OF SOCIAL SECURITY, | ) | United States Magistrate Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Terry E. Abshire ("Abshire") brings this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the court on cross-motions for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision.

Plaintiff claims disability based on dog bites to his hands. The administrative law judge held two hearings in this case, arranged for a consultative medical examination of plaintiff and had a board certified neurologist testify as a medical expert. All of the physicians who have rendered opinions in this case have concluded that plaintiff retains the capacity to do some work and is not disabled. Plaintiff's arguments to the contrary are unavailing. As such, the Commissioner's motion for summary judgment will be granted.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final

decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE HISTORY

Plaintiff was born in 1953, is a high school graduate, and worked until 1996 as a roofer. (Administrative Record, hereinafter "R.," at 66.) Plaintiff protectively filed an application for DIB on February 11, 2002, alleging that he was disabled as of September 1, 2001 due to nerve damage in both arms from dog bites. (R. 79) Plaintiff's application was denied initially and upon reconsideration. Two administrative hearings were conducted before an administrative law judge ("ALJ"). At the first hearing on July 9, 2003, the ALJ stated that he thought "the file is a bit skimpy," (R. 236), and referred plaintiff out for a neurological examination. A consultative examination was performed on September 24, 2003 by Dr. Hetzal Hartley, after which a second administrative hearing was held on March 25, 2004. At the second hearing, the ALJ found that plaintiff had arm and hand impairments which were "severe" at step two of the sequential evaluation process and that he was limited to, but capable of, light work subject to certain restrictions and could perform a number of jobs identified by the vocational expert ("VE"). (R. 263) At that hearing, a board certified neurologist testified as a medical expert and agreed with an earlier residual functional capacity assessment, (R. 256), pursuant to which it was determined that plaintiff was placed in the light duty, unskilled work category. (R. 256, 263) The ALJ's decision became final for the purposes of judicial review when the Appeals Council

2

denied plaintiff's request for review. (R. 5-7) Plaintiff has filed this action challenging the Commissioner's decision.

In reports filed in support of his application, plaintiff stated that he spent his days working in his garden and yard and that he spent his evenings watching television. (R. 90, 93) He also indicated that he worked on lawnmowers approximately two times a month although he had to have help taking off blades and breaking big bolts. (R. 92) Plaintiff stated that he took care of his dog, that he did not go many places because his neighborhood was rough, that he got along really well with people, and that he slept well. (R. 93-94) Plaintiff stated that he felt that roofing was the only job where he could earn enough to make ends meet but he could no longer do it. (R. 105)

Between January 2000 and August 2001, plaintiff was treated both in the emergency room and surgically for a number of dog bites. (R. 157, 161, 162, 202, 211) On September 25, 2002, William Humphries, M.D., examined plaintiff. (R. 122) Plaintiff advised Dr. Humphries that he had required surgery on his left hand due to dog bites in 2001 and that six months later his right hand was bitten and required suturing but not surgery. (R. 122) Plaintiff also indicated that he had other bites throughout his body but he did not feel that those bites were impairing. (R. 122) Dr. Humphries found that plaintiff had a full range of motion of the joints of his upper extremities as well as in the joints of his lower extremities. (R. 123) Dr. Humphries noted that the dorsal side of plaintiff's right hand, right thumb, and right radial carpal area was very tender to palpation; that there was some loss of sensation to light touch in the radial distribution of the right wrist and the dorsal aspect of the thumb and proximal hand. (R. 123-24) Dr. Humphries reported that finger to nose testing was performed adequately. (R. 124) Plaintiff was able to place his hands on the examination table and shift his weight easily without guarding his hand

3

movements. (R. 123) Plaintiff was also able to bear the weight of his entire body on both hands when getting on and off the examination table. (R. 123) Plaintiff had a mild, fine tremor of most of his body including his arms and legs. (R. 124) His radial, median, and ulnar nerve functions were intact bilaterally; there was some "slight" decreased extension of plaintiff's left hand when his wrist was completely extended. (R. 123) Plaintiff's fine manipulation was adequate bilaterally although he had some pain on fine manipulation primarily in his left hand. (R. 123) He had good pincer movements of the thumb and other fingers of both hands. (R. 124) Plaintiff's gait was normal. Heel, toe walk, and tandem walk were also performed adequately with some wobbling. (R. 124) Plaintiff could bear weight on each leg, and the strength of both his legs and arms was normal. (R. 124)

Dr. Humphries opined that plaintiff could stand and walk six hours in an eight-hour workday as well as sit six hours in an eight-hour workday, that he could lift ten pounds frequently and twenty-five pounds occasionally, that he could crawl occasionally, and that he had no other postural limitations. (R. 125) The physicians who reviewed plaintiff's records at the request of the state agency through January 2003 advised that plaintiff was not disabled and agreed that plaintiff could lift ten pounds frequently, and twenty occasionally. (R. 20-21, 129)

At the first administrative hearing on July 9, 2003, plaintiff said that he had not worked or attempted to work since September 1, 2001, his claimed onset date of disability. (R. 220) Plaintiff stated that he lived in a house with his girlfriend who worked at a nursing home. (R. 228) Plaintiff explained that his job at Roanoke Fruit and Produce, which involved picking up heavy boxes of fruit and vegetables weighing from twenty to fifty pounds, had only been a part-time job and that he was fired for absenteeism after he decided it was not worth going to work and having his hands swell and ache for six, seven, eight, or ten dollars. (R. 221)

4

Plaintiff testified that he could use his hands only "very little." (R. 225) Plaintiff stated that after he used his hands for fifteen or twenty minutes, they swelled and ached; plaintiff would then have to soak them in water for fifteen or twenty minutes and wait an hour to an hour and a half before he could use them again. (R. 225-26) Plaintiff testified that he washed dishes and that he mowed his lawn by pushing the lawnmower with his belly. (R. 226) Plaintiff stated that he would also work on wood but that it took him forever. (R. 230)

Following the first administrative hearing, plaintiff was examined by Hetzal Hartley, M.D., on September 24, 2003. (R. 193-96) Plaintiff advised Dr. Hartley that his hands were not useful for any kind of prolonged labor and that if he used his hands too much they became painful and swollen. (R. 193) Plaintiff also told the doctor that he cooked, cleaned, and did laundry as well as gardened, did yard work, and performed minor home repairs. (R. 193)

On examination, Dr. Hartley noted that plaintiff had a full range of motion in his neck, shoulders, arms, and back. (R. 194) Plaintiff's deep tendon reflexes were 2+ and symmetric throughout. (R. 194) Plaintiff's grip strength in his hands was 5/5 and symmetric, and there was no sign of atrophy of any of the muscles of the hands. (R. 194) Upon examination, Dr. Hartley also observed that there was dirt under the fingernails and that plaintiff had typical callus on his palms. (R. 194) Dr. Hartley noted that plaintiff was able to manipulate, pull, push, and climb on and off the examining table. (R. 194) Dr. Hartley also noted that plaintiff helped the doctor repair the dictation table when a bolt came out of it. (R. 194) Plaintiff had excellent motor strength on resistance in all major motor groups including the wrist and hand flexors. (R. 195)

Dr. Hartley also noted that although plaintiff appeared to try to maximize his symptoms and complaints by describing severe pain even with only light touch of the hands, he used his hands in normal fashion when he did not realize that he was being observed. (R. 195) Dr.

5

Hartley advised that plaintiff was capable of performing both light and sedentary work. (R. 195) He reported that plaintiff could lift and carry twenty-five pounds frequently and fifty pounds occasionally, and did not impose any additional postural or manupulative work-related restrictions. (R. 189-92)

At a supplemental administrative hearing following Dr. Hartley's examination, plaintiff explained that the assistance he gave Dr. Hartley with repairing the doctor's dictation table involved holding only a part of negligible weight in place while Dr. Hartley replaced a pin. (R. 246) Plaintiff stated that when he used his hands for any length of time, his left arm and hand swelled. (R. 246-47) He then said he also had a problem with his right hand that was caused when the bones in the top of that hand were broken when he hit a door. (R. 247) Plaintiff stated that he could used his right hand for hard work such as pulling wrenches for thirty minutes before his hand would swell, ache, and burn. (R. 248) Plaintiff said that he could carry a gallon of milk with his right hand and that he tried to avoid picking anything up with his left hand. (R. 249-50)

Ward Stevens, M.D., testified as a medical expert at the supplemental hearing that plaintiff did not meet or equal any listing. (R. 253) He explained that plaintiff had sustained a significant dog bite to his left hand in 2000 and that the wound had become infected after initial treatment, something that happens commonly following animal bites. (R. 254) Dr. Stevens stated that plaintiff recovered well from this injury and that he had been released to return to work. (R. 254)

Dr. Stevens testified that based upon plaintiff's examinations in December 2002 and September 2003, plaintiff did not suffer from significant weakness in his hands. (R. 254-55) He noted that plaintiff had good pincher movement of the thumb and other fingers and that he did not have muscle wasting in his left hand. (R. 255) The doctor explained that it was possible that

6

plaintiff could have some swelling in his left hand due to the surgery, but that he did not know of any reason why plaintiff could have swelling in his right hand. (R. 257) Dr. Stevens agreed with Dr. Hartley's assessment that plaintiff did not have any significant loss of functioning in his hands. Although Dr. Stevens thought plaintiff could lift fifty pounds occasionally, he was very comfortable with plaintiff lifting twenty-five pounds occasionally and at least ten pounds frequently. (R. 255, 261-62)

Dr. Stevens explained that decreased extension of the hands would not have a great impact on plaintiff's use of his hands and would not limit his ability to lift and carry things. (R. 259) Dr. Stevens said that the mild of fine tremors noted by Dr. Humphries were probably related to excessive alcohol intake, and could be due to significant caffeine intake, but was not related to the injuries to plaintiff's hands. (R. 260) He also explained that the dimunition in sensation in the radial distribution of plaintiff's right hand noted by Dr. Humphries refers to the dorsum or back of the hand and not to plaintiff's palm. (R. 260) Dr. Stevens also testified that neuropathy was a specialty of his and explained that to have a neuropathy, an individual would have to have findings other than some sense of decreased radial sensation, and that any significant neuropathy had to be associated with motor signs as well. (R. 261)

A vocational expert ("VE") testified that there were jobs existing in significant numbers in the economy that could be performed by an individual of plaintiff's age, education, and vocational background who was limited to light work that did not involve repetitive motions that shocked the hands such as using a tool like a hammer or machinery like an air wrench or air hammer, and to work which did not involve exposure to caustic materials or chemicals. (R. 263) As representative jobs, the VE discussed the light, unskilled jobs of inspector, stock clerk /order filler, and laundry/dry cleaning worker. (R. 264)

7

## ANALYSIS

Plaintiff argues that as the medical evidence of the record overwhelmingly shows plaintiff's severely limited use of his hands, the ALJ erred in relying upon the opinions of Dr. Hartley and Dr. Stevens, and consequently erred in denying plaintiff's claim for benefits. For the reasons discussed below, plaintiff's argument is incorrect.

The Social Security Act places the burden of proof on the individual who is seeking benefits, stating that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). Applicable regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a); see also Reichenbach v. Heckler, 808 F.2d 309, 311 (4th Cir. 1985).

The crux of plaintiff's argument is that the findings and opinions of Drs. Humphries and Hartley are fundamentally different and that the ALJ was required to fully credit the findings and opinions of Dr. Humphries and reject the findings and opinions of Dr. Hartley. Having reviewed the record and applicable case law, the court finds that the ALJ acted properly in his consideration of both doctors' opinions.

Regarding plaintiff's complaints of pain, plaintiff must demonstrate through medical evidence, including objective observations, support for the notion that pain is disabling. It is clear under the law that "[p]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or lack thereof." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R. § 404.1529. An individual does not have to be pain free in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990). Plaintiff's statements to physicians by way of history or complaint do not constitute objective

8

medical evidence; the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence. Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1984).

Contrary to plaintiff's argument, the findings of Drs. Humphries and Hartley were in many ways similar: for instance, both doctors opined that plaintiff was not disabled under the Act (R. 125, 195); that plaintiff had full range of motion in most of his upper extremities (R. 123, 194); that plaintiff was able to get on and off the examination table without difficulty and to bear the entire weight of his body on his hands when doing so (R. 123, 194); and that plaintiff's strength was normal in his arms and legs (R. 124, 195).

Where the findings of these two doctors differ in degree, it is not to the extent suggested by plaintiff, and the ALJ's decisions regarding these differences are supported by substantial evidence. Dr. Humphries opined that plaintiff could lift ten pounds frequently and twenty-five pounds occasionally while Dr. Hartley opined that he could lift twenty-five pounds frequently and fifty pounds occasionally. The ALJ limited plaintiff to light work, and light work is within the capacity range envisioned by Dr. Humphries' more conservative assessment. See 20 C.F.R. § 404.1567(b) (stating that light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying items weighing up to 10 pounds). This decision was also supported by the opinion of Dr. Stevens, the consultative neurologist, who indicated that while a physician's determination of lifting ability was subjective and a "grey area," he was "very comfortable" with a lifting restriction of twenty-five pounds occasionally. (R. 261-62) As such, the ALJ's finding regarding residual functional capacity ("RFC") was supported by all three doctors who assessed plaintiff. (R. 189-96; 128-137; 253-262)

9

Moreover, the ALJ's decision was supported by a wealth of other evidence in the record. Plaintiff was cleared to return to work as of March 2000 by Dr. Hagan, the orthopedic specialist who treated plaintiff for his left hand/arm dog bite injuries of January 2000. (R. 167-68) The treatment of the dog bites of plaintiff's right hand and forearm did not require any surgical procedure and October 2000 x-rays of plaintiff's right hand were normal. August 2001 x-rays of plaintiff's right forearm were "[e]ssentially negative" apart from scattered gas densities consistent with a dog bite and soft tissue lacerations. (R. 147) In September 2003, Dr. Humphries found that plaintiff's grip strength in his hands was 5/5 and symmetric, and there was no sign of atrophy of any of the muscles of plaintiff's hands upon examination. (R. 194)

Contrary to plaintiff's assertion on brief, the VE did not testify that every job in the national economy required good use of both hands. (Plaintiff's Brief at 5) Given the manner in which the questions and answers were given, it appears that plaintiff reads too much into a partial answer by the VE.[1]

---

[1]Plaintiff argues that the following testimony supports the conclusion that both hands are required for any job in the national economy. As is evident, such a conclusion does not follow from that testimony.

> ALJ: And then you can sort of slack off the pace until the next truck comes through just moving stuff around or doing whatever they tell you, but you work fast when the trucks are there. Different type of think, but still putting pressure – I'm trying to determine is there any type of jobs that don't put a lot of stress on the hands?

> VE: You know, there would probably be jobs for one-handed people, but I don't think that there is anything that –

> ALJ: Doesn't stress the hands?

> VE: Yeah, you need use of the hands.

(R. 236)

10

Regardless, at the first hearing, the ALJ determined that the "file is a little skimpy," (R. 236), and ordered a consultative examination of plaintiff which subsequently was performed by Dr. Hartley. In addition, Dr. Stevens, a board certified neurologist, reviewed plaintiff's medical records and testified as a medical expert at the second administrative hearing on March 25, 2004. The ALJ accommodated plaintiff's impairments by limiting plaintiff to light work that did not involve repetitive motions that shocked the hands such as using a tool like a hammer or machinery like an air wrench or air hammer, to work which did not involve any type of jarring blow to the hands or wrists, and to work which did not involve exposure to caustic materials or chemicals. (R. 263)

At oral argument, plaintiff argued that substantial evidence was lacking because Dr. Humphries found peripheral neuropathy, decreased extension of the hands when the wrist is extended completely on the left side, loss of sensation to light touch in the radial distribution of his right wrist, and mild fine tremor of most of the body. (R.124) Also, plaintiff notes that at one examination on June 11, 2003 at Kuumba Community Health & Wellness Center, it was noted that plaintiff's muscle function in his left hand was reduced to 3/5. (R.187) Plaintiff argues that these findings corroborate plaintiff's complaints of pain and weakness in his hands resulting from the dog bites and attendant surgeries, and that none of the medical examinations deal with plaintiff's principal concern that repetitive hand motion causes him considerable pain and swelling.

---

Beyond that, plaintiff's argument is inconsistent with the Listing of Impairments contained in Title 20, Part 404, Subpt. P, App. 1, § 1.00.B.2.c. Indeed, such listing suggests disability where there is an extreme loss of function of both upper extremities.

11

The Commissioner countered by noting that Dr. Hartley found that plaintiff had full range of motion of his arms, supported his weight with his hands, exhibited no signs of muscle atrophy in his hands and his "grip strength was 5/5 and symmetric." (R. 194) Dr. Hartley noted that the "patient appears to be completely capable of performing light to moderate work within the economy. The fact that he is maintaining the household, performing gardening and home repairs indicates to me that he is certainly employable." (R. 195) Dr. Hartley also thought that plaintiff exaggerated his symptoms. (R. 195) Also, Dr. Stevens, a board certified neurologist testifying at the second administrative hearing as a medical expert, disagreed with Dr. Humphries' finding of peripheral neuropathy, noting that such a condition would exhibit other motor signs lacking in plaintiff. (R. 261) Dr. Stevens did not place any significant limitation on plaintiff due to Dr. Humphries' finding as to reduced extension, except perhaps a limit on lifting things above his head. (R. 259) Nor did Dr. Stevens place any significant limitation on plaintiff's reported loss of sensation on the back of the right wrist. (R. 260-61) As to the mild tremors, Dr. Stevens associated those with alcoholism. (R. 260)

The Commissioner acknowledged the note dated June 11, 2003 from the Kuumba Community Health Center reflecting left hand muscle function at 3/5, but discounted it for two reasons. First, both before and after plaintiff's visit to Kuumba, Drs. Humphries and Hartley noted normal muscle strength in plaintiff's extremities. (R.124, 130, 194) Second, the Commissioner notes that the Kuumba record recites that the motivation for his visit to Kuumba was that "Patient is trying to get disability and was told he has to go to a Doctor," (R. 186), and that he was intoxicated during the examination and admitted drinking roughly a case of beer. (R. 186-88)

12

Plaintiff's argument regarding repetitive motion of his hands likewise is not borne out by the medical records. Review of the medical records does not reveal any instance where plaintiff voiced this concern to any of his doctors. To be sure, plaintiff did state at the administrative hearing that he could work with his hands for only 15-20 minutes before they swelled and ached requiring resting and soaking for 60-90 minutes. (R. 226) Even so, the ALJ considered the issue of repetitive motion in the hypothetical posed to the VE. (R. 263)

While the Commissioner conceded that plaintiff experienced some residual pain and impairment to the dorsal (non-palm) side of his non-dominant (left) hand due to the dog bites and surgeries, there was nothing in the medical records to support the severity of the impairment claimed by plaintiff, i.e., that he needed to rest and soak plaintiff's hands for 90 minutes at a time. The Commissioner argues that there is no medical evidence to support the extent of the functional loss claimed by plaintiff, and that there is substantial evidence to support a finding that plaintiff is not disabled from all work.

The court agrees with the Commissioner. Plaintiff's medical condition was assessed either by physical examination or by records review by three physicians. None of these physicians, Drs. Humphries, Hartley and Stevens, found plaintiff's impairments to be disabling from all work. In fact, all of these physicians found that plaintiff was capable of working. Plaintiff's subjective complaints of pain and the extent of his claimed disability were not consistent with the examinations and findings of the physicians who examined him. The ALJ's conclusion that plaintiff retained the residual functional capacity to perform work that exists in significant numbers in the economy clearly is supported by substantial evidence.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is substantial evidence to support the conclusion that

13

plaintiff was not disabled as defined under the Social Security Act as of December 31, 2000. See

Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir.

1979). As such, defendant's motion for summary judgment must be granted.

## CONCLUSION

In affirming the final decision of the Commissioner, the court does not suggest that

plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply

fails to document the existence of any condition which would reasonably be expected to result in

total disability for all forms of substantial gainful employment. It appears that the ALJ properly

considered all of the objective and subjective evidence in adjudicating plaintiff's claim for

benefits. It follows that all facets of the Commissioner's decision in this case are supported by

substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum

Opinion to all counsel of record.

    **ENTER:**    This 15 day of September, 2005.

_____
United States Magistrate Judge

14



CW - 493

# - Barcode Data -

## Queue: KristinA

Case 7:04-cv-00683-mfu   Document 21   Filed 09/21/05   Page 15 of 16   Pageid#: 82

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 16 2005

BY: JOHN F. CORCORAN, CLERK
DEPUTY CLERK

TERRY E. ABSHIRE,           )
    Plaintiff,            )
                          )
v.                          )     Case No. 7:04-CV-00683
                          )
JO ANN B. BARNHART,         ) By: Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY,  )     United States Magistrate Judge
    Defendant.            )

### FINAL JUDGMENT AND ORDER

For reasons stated in a Memorandum Opinion filed this day, summary judgment is hereby

entered for the defendant and it is so

### O R D E R E D.

The Clerk is directed to send certified copies of this Judgment and Order to all counsel of

record.

Enter this 15 day of September, 2005.

UNITED STATES MAGISTRATE JUDGE